UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK BOLES, individually and on behalf of all others similarly situated, | ) ) ) | |
| NICHOLAS OAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| KOS SEMONSKI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:21-cv-378 |
| CITY OF ST. LOUIS, MISSOURI, | ) ) | **PLAINTIFFS DEMAND** |
| And | ) ) | **JURY TRIAL** |
| GREGORY F.X. DALY, in his official capacity only, | ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF CIVIL RIGHTS, FOR CLASS ACTION STATUS, AND FOR DECLARATORY RELIEF UNDER HANCOCK AMENDMENT**

Plaintiffs Mark Boles, Nicholas Oar, and Kos Semonski, who are nonresidents of the City of St. Louis, individually and on behalf of all others similarly situated, by undersigned counsel, W. Bevis Schock and Mark C. Milton, state as follows:

**Introduction**

1.      Nonresidents of the City of St. Louis are subject to a 1% earnings tax on salaries, wages, commissions, other compensation and/or net profits "for work done or services performed or rendered ***in the City***." The tax is primarily collected by city-based employers withholding 1% from 100% of their nonresident employees' pay during the

year.  Before tax year 2020, Defendants, the City and the City's Collector of Revenue, paid refunds to nonresidents who worked outside the City based on the number of days they worked outside the City. Now, Defendants refuse to pay such refunds. In doing so, Defendants are brazenly and unlawfully keeping Plaintiffs' money. This shocks the conscience and violates Plaintiffs' Fourteenth Amendment right to substantive due process. This further violates their Fourth Amendment right to be free of unreasonable seizures.

2.      Further, for tax year 2020, in a change of policy without any change to the earnings tax ordinance itself, and with Plaintiffs' money already in Defendants' hands, Defendants refuse to pay refunds to nonresidents except those who are traveling outside the City for business.  This is an arbitrary distinction without rational basis. This conduct violates Plaintiffs' Fourteenth Amendment right to equal protection.

3.      Plaintiffs, individually and on behalf others similarly situated, seek damages in the amount of the refunds they would have received but for Defendants' unconstitutional conduct, and injunctive relief to stop Defendants' unlawful conduct.

4.      For their damages claims Plaintiffs seek class action status to help all those harmed by Defendants' conduct.

5.      Defendants' conduct enacts a new tax or expands the tax base, and therefore, is subject to a declaration that it violates the Hancock Amendment. Therefore, Plaintiffs seek a declaration that Defendants' conduct violates the Hancock Amendment.

**Parties**

6.      Plaintiff Mark Boles is an individual residing in St. Louis County, Missouri.

7.      Plaintiff Nicholas Oar is an individual residing in St. Charles County, Missouri.

8.      Plaintiff Kos Semonski is an individual residing in St. Charles County, Missouri.

9.      Plaintiffs seek to be class representatives for all claims herein except the Hancock

Amendment claims. For the Hancock claims they are Plaintiffs on their own as individual

taxpayers.

10.     Each Plaintiff has, at all relevant times, had earnings taxes withheld from their pay by

their employers and paid to the City of St. Louis.

11.     The City of St. Louis ("the City") is a Constitutional Charter City of the State of

Missouri.

12.     Gregory F.X. Daly is the elected Collector of Revenue for the City ("the Collector"),

exercising the functions and responsibilities prescribed by, among other provisions of

law, RSMo. § 82.599, the City of St. Louis Charter, Art. XV, § 20, and the Revised Code

of the City of St. Louis (The City Code"), §§5.08.010, *et seq*.

13.     The Collector is responsible for collecting all earnings tax due to the City of St. Louis.

14.     The Collector, as an elected official, is a policy maker for the City.

15.     Plaintiffs sue the Collector in his official capacity only, creating *Monell* liability for the

City for the damages claims.[1]

**Jurisdiction and Venue**

16.     Plaintiffs assert federal substantive due process claims and an equal protection claim

under the Fourteenth Amendment and an unreasonable seizure claim under the Fourth

Amendment.  Remedies for those claims are actionable through 42 U.S.C. § 1983 and §

1988.  This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C.

§§ 1331, 1343 and 2201.

---

[1] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

17.     Injunctive relief is authorized by Fed.R.Civ.P. 65.

18.     Declaratory relief is authorized by Fed.R.Civ.P. 57 and 28 U.S.C. § 2201.

19.     The court may invoke supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

20.     Plaintiffs bring their Hancock Amendment claims under the Missouri Constitution, Mo. Const. Art. X §§ 16-23. Plaintiffs have standing to bring such claims, including claims for costs and attorney's fees, under Mo. Const. Art. X § 23, which provides standing to taxpayers to bring actions to enforce the Hancock Amendment.

21.     Mo. Const. Art. X § 23 states that the taxpayer "shall have standing to bring suit in a circuit court of proper venue." It does not state that the taxpayer shall only have standing in Circuit Court, and Plaintiffs suggest that this court may therefore hear the Hancock Amendment claim as a supplemental state law claim pursuant to the above-referenced 28 U.S.C. § 1367.

22.     Venue is proper in this court, the Eastern District of Missouri in the Eastern Division Court, because under 28 U.S.C. § 1391 Defendants' relevant conduct occurred in the City of St. Louis, within this judicial district.

**Color of State Law**

23.     At all relevant times Defendant City and Defendant Collector acted under color of state law.  Particularly, at all relevant times the City and the Collector acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

**Jury Demand**

24.     Plaintiffs demand jury trial on the damages claims.

**Facts**

25.     The Earnings Tax Law, City Code § 5.22.020 ("the Ordinance"), states in relevant part:

> A tax for general revenue purposes of one percent is imposed on:
>
> . . .
>
> B.      Salaries, wages, commissions and other compensation earned after July 31, 1959, by nonresident individuals of the City for **work done or services performed or rendered in the City** . . .   (Emphasis added).

26.     This language is plain and unambiguous.

27.     If there is any ambiguity the Ordinance must be construed in favor of the taxpayer.[2]

28.     The Ordinance thus creates tax liability for nonresidents only for work done when the taxpayer is physically present in the City, for otherwise, the taxpayer would not be doing the work or performing the service in the City.

29.     The Collector of Revenue's website echoes this language, stating that the one percent earnings tax is collected from all:

>       a.      City residents regardless of where they work, and
>
>       b.      Non-city residents **who work within city limits**.[3]

30.     The collection of earnings tax from persons who live in the City is not in dispute in this case.

---

[2] "An ordinance enacted as a taxing measure must be given a strict interpretation and construed against the taxing authority and in favor of the taxpayer." *Bachman v. City of St. Louis*, 868 S.W.2d 199, 202 (Mo. Ct. App. 1994) (citing *Adams v. City of St. Louis*, 563 S.W.2d 771, 775 (Mo. banc 1978).

[3] "Non-residents are required to pay the Earnings Tax on work or services performed within the City of St. Louis." Earnings Tax FAQs, available at https://www.stlouis-mo.gov/collector/earnings-faq.cfm#whoFiles. The City of St. Louis government website also states: "The earning tax is a one percent earnings tax collected from all city residents regardless of where they work, and non-city residents who work *within city limits*." *Available at* https://www.stlouis-mo.gov/government/departments/collector/earnings-tax/index.cfm#:~:text=The%20earning%20tax%20is%20a,who%20work%20within%20city%20limits (emphasis added).

31.     The revenue from the earnings tax makes up in a typical year approximately one-third of the City's revenue. For fiscal year ending June 30, 2020, the earnings tax generated about $180 million for the City. Some have estimated that as much as 75% of the earnings tax collected each year comes from nonresidents, although only a portion of that money comes from nonresidents who have worked from home during the COVID-19 pandemic.[4]

32.     Section 5.22.060(A) of the Code requires "[e]very employer within or doing business in the City who employs one or more persons" to withhold and pay to the Collector 1% of an employee's compensation on a quarterly basis, regardless of whether the employee is a resident or nonresident of the City. That section reads:

> Every employer within or doing business within the City who employs one or more persons on salary, wage, commission, or other compensation basis, shall deduct at the time when earned irrespective of when paid, the tax of 1% of salaries, wages, commissions, or other compensation due by the employer to the employee and subject to tax, and shall quarterly make his return and pay to the collector, on or before the last day of July, October, January and April of each year, the amount of taxes so deducted for the three calendar months next preceding the month in which the return is required to be filed. Said return shall be on a form or forms obtainable from the collector and shall be subject to the rules and regulations prescribed therefor by the collector. Every such employer shall furnish each employee with a statement of the amount of the tax withheld. The failure of any employer to deduct or withhold at the source the amount of tax due from the employees shall not relieve the employee from the duty of making a return and paying the tax.

---

[4] *Working from home instead of in the city? Don't expect a break from paying the St. Louis earnings tax, June 12, 2020,* available at https://www.stltoday.com/business/local/working-from-home-instead-of-in-the-city-don-t-expect-a-break-from-paying/article_ddc57bb7-7709-5534-8524-1c414e5f7ef4.html.

33.     At all relevant times, pursuant to that language, Plaintiffs' employers, who are located within or are doing busines within the City, have withheld the 1% earnings tax from Plaintiffs' pay and then remitted the earnings tax to the Collector.

34.     Pursuant to custom and policy over many years prior to tax year 2020, nonresidents of the City who have spent a certain number of days working outside the City have been able to file for an earnings tax refund based on the number of days worked outside the City.

35.     Claims for refunds are made on a proportionate basis, assuming 260 workdays per year.

36.     Pursuant to custom and policy over many years prior to tax year 2020, the City has then refunded nonresidents the tax withheld for days worked outside the City.

37.     Prior to tax year 2020, such persons have requested their refunds by using Form E-1R. Other than updating the "Calendar Year" at the top of the document, the form remained materially unchanged from at least tax year 2015 through tax year 2019.[5]

38.     On inference, the Collector promulgated Form E-1R pursuant to his authority under City Code 5.22.100, which states in relevant part:

> The Collector is charged with the enforcement of the provisions of this chapter and is empowered to adopt and promulgate and to enforce rules and regulations relating to any matter or thing pertaining to the administration and enforcement of the provisions of this chapter, including provisions for the reexamination and correction of returns and payments alleged or found to be incorrect or as to which an overpayment or underpayment is claimed or found to have occurred.

39.     This rule making authority does not allow the making of rules which are arbitrary, capricious, unreasonable, unlawful, or in excess of jurisdiction.[6]

---

[5] The Collector's website currently has versions of the Form E-1R dating back to tax year 2015, which remained consistent until tax year 2020, available at https://www.stlouis-mo.gov/government/departments/collector/documents/e-1r-form.cfm.

[6] *Gott v. Dir. of Revenue*, 615 S.W.3d 52, 55 (Mo. 2020).

40. On inference, the procedure for obtaining refunds in place for years prior to tax year 2020 was pursuant to custom and practice as created by the Collector.

41. At all relevant times, Form E-1R has contained a section requiring the taxpayer's employer to sign a part of the form certifying the number of days the taxpayer worked outside the City limits.

42. Prior to tax year 2020, Form E-1R did not require the taxpayer or the employer to provide a reason as to why the taxpayer worked the stated number of days outside the City. The form, in relevant part, required only completing the following:

> This is to certify the below mentioned employee, a non-resident of the City of St. Louis, worked **outside the City of St. Louis** a total of _____ whole days
>
> Address of work location must be provided for days worked **outside the City of St. Louis**. Please provide address on the line below.
>
> _____

(emphasis added).

43. In March 2020, due to the COVID-19 pandemic, and in accordance with local health orders, many City employers either required or allowed their employees to work remotely, which in many cases was in their residence outside the City.

44. This created a looming revenue problem for the City because if it continued its practice of issuing refunds to taxpayers who did not actually work in the City, it would lose earnings tax revenue from those non-city residents no longer working in the City.

45. In response, the Collector issued a statement regarding the future issuance of earnings tax refunds, which read in relevant parts as follows:

*** 

> **If you live outside of the city limits and your employer continues to operate within the city limits, you will be required to pay the earnings tax even if your employer permits you to work virtually.**

\*\*\*

**As we have allowed in the past**, **if your place of employment is in the city and you are required to travel for business outside of the city to meet customers, clients, etc., those days can be deducted from your earnings tax calculation with the E1-R form with proper documentation**. **However, if your place of employment remains in the City while you are working virtually, you will be required to pay the tax**.[7]

(Emphasis added)

46.     Based on the Collector's statement, most employers continued to withhold earnings taxes for non-city resident employees who were and are working remotely due to the COVID-19 pandemic.

47.     In December 2020, the Collector promulgated a new E-1R refund request form for tax year 2020 ("2020 E-1R) and a required attachment called the Form E-1RV, which contains a new verification statement requiring employees and employers to attest to the following statement:

> I understand that a regular workday does not include holidays, vacation, working remotely from home or other work absences (attach a separate sheet if additional space is needed).
>
> Substantiating documentation such as travel and mileage logs, airline or train tickets, lodging receipts, etc., must be included when filing this form.

48.     The new 2020 Form E-1R contains a new provision that requires taxpayers to provide the following:

> Address of work location along with substantiating documentation (travel and mileage logs, airline or train tickets, hotel receipts, etc.) must be provided for days worked outside the City of St. Louis. Please complete Form E-1RV and submit with this return.

---

[7] *See Statement Regarding Employee Remote Work*, available at https://www.stlouis-mo.gov/collector/docs/Statement-Regarding-Employee-Remote-Work-Final.pdf.

49.     The 2020 Form E-1RV also states that days worked outside of the City due to a temporary reassignment caused by COVID-19 may not be included in the non-residency deduction formula on Form E-1R when claiming a refund for tax year 2020.

50.     The Collector's public statement, along with the new 2020 E-1R and E-1RV, was and is designed to intimidate city-based employers from discontinuing the withholding of the earnings tax from nonresidents' pay who were and/or are working remotely from outside the City and/or from filling out the form in a manner consistent with the Ordinance.

51.     The Collector's statement and actions to reinterpret and apply the Ordinance, including the new Form E-1RV requirement, shocks the conscience.

52.     The Collector's statement and actions violate the Equal Protection Clause of the Fourteenth Amendment because they are discriminatory against nonresidents who worked remotely from home but were not travelling while working remotely.

53.     The Collector's statement and actions subject such nonresidents to discriminatory treatment by subjecting them to taxes not imposed on others of the same class, as that class is defined in the Ordinance.[8]

54.     The new requirements violate the Equal Protection Clause of the Fourteenth Amendment because they select out taxpayers who worked from home but were not travelling, an arbitrary distinction.

55.     The new form and process is discriminatory enforcement of a facially valid law and is therefore unconstitutional under the equal protection clause.[9]

---

[8] *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989), *Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946).
[9] *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74 (1886); *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

56.    The new form and process subjected such taxpayer to discriminatory treatment by subjecting him to taxes not imposed on others of the same class.

57.    There is no rational basis for treating nonresident teleworkers any differently than nonresident business travelers, yet the City is still issuing refunds based on days spent outside the City traveling, but not working remotely from home.

58.    The Collector's statement and actions assert, unilaterally and unlawfully, that the City may retain Plaintiffs' 1% wages for days worked outside the City even though the earnings tax ordinance does not allow tax on such work.

59.    The Collector 's statement and actions insinuate that refunds have historically been limited to days taxpayers spent traveling outside of the City for business. That limitation is found neither in the Ordinance nor in the pre-2020 Form E-1R, and this has not been the historical application.

60.    Before tax year 2020 the City did not impose tax on non-city residents for days spent *working* outside the City, regardless of reason, presumably because the law does not allow imposition of the tax for such workdays.

61.    The Collector's statement and actions appear to be designed to intimidate non-city residents from seeking refunds they are otherwise lawfully entitled to receive.

62.    For years before the COVID-19 pandemic, that is, before tax year 2020, Plaintiffs worked many days of the year remotely from non-City of St. Louis locations.

63.    Their employers duly withheld the 1% earnings tax for all workdays of the year.

64.    For such years these Plaintiffs then applied for refunds on Form E-1R, with Employer certification of the exact number of days.

65.    The City then always paid Plaintiffs their refunds on a routine basis.

**Plaintiff Boles**

66.    On or about January 22, 2021, as he had done in previous years, Plaintiff Boles submitted the 2020 Form E-1R to the Collector.

67.    On February 9, 2021, the Collector's office advised Plaintiff Boles it had received his completed Form E-1R and that it was submitted to the refund department.

68.    On or about February 17, 2021, the Collector's office advised Plaintiff Boles that he needed to submit a new form, Form E-1RV, an attachment to Form E-1R.

69.    Thereafter, Plaintiff Boles submitted the completed Form E-1RV to the Collector.

70.    On February 23, 2021, a representative from the Collector's office e-mailed Plaintiff Boles as follows:

> Effective January of 2020 working remotely from home will know [*sic*] longer be allowed as a deduction for refund claims. Please review our website www.stlouiscollector.com for further information regarding this change.

71.    Plaintiff Boles immediately responded to the representative by email stating, "I've been teleworking from home for several years. I expect my City Earnings tax refund as has been refunded in the past." In response, the representative directed Plaintiff Boles to the Assistant Collector for further assistance.

72.    On February 23, 2021, in response to Plaintiff Boles's follow-up email, the Assistant Collector stated as follows:

> Starting tax year 2020 our refund policy changed. I understand you work from home but your employer location is in the city. I know you are frustrated because you have received refunds in the past years. The E-1VR, completed by your employer, gives the [redacted] address as your working location. I do suggest you go to our website which gives a clear explanation of who qualifies for a refund. I can not approve for you to get a refund.

**Plaintiff Oar**

73.    On or about February 8, 2021, Plaintiff Oar submitted the 2020 Form E-1R and the Form E-1RV to the Collector seeking a refund of earnings taxes withheld from his pay based on the number of days he worked outside the City during 2020.

74.    On February 10, 2021, the Collector's office advised Plaintiff Oar it was auditing the claim. The auditor asked for a letter on his company stationery stating that his virtual private network ("VPN"), that is, his business computer network, was in Minneapolis, Minnesota and where his permanent work assignment was located.

75.    On that same February 10, 2021, Plaintiff Oar's employer's human resources department emailed the Collector's Office confirming that Plaintiff Oar's VPN was in Minneapolis, Minnesota, and providing the address for his permanent work assignment in the City of St. Louis.

76.    On February 11, 2021, the Collector's office denied Plaintiff Oar's refund claim stating that regardless of his VPN location, Plaintiff's refund request would be denied.

**Plaintiff Semonski**

77.    On or about February 5, 2019, Plaintiff Semonski submitted the 2018 Form E-1R to the Collector. Collector honored request and refunded 2018 taxes for time worked outside of the City of St. Louis.

78.    On or about March 10, 2020, Plaintiff Semonski submitted the 2019 Form E-1R to the Collector. The Collector honored the request and refunded 2019 taxes withheld from Plaintiff Semonski's based on days he worked remotely outside the City.

79.    On or about February 18, 2021, as he had done at least the two prior years, Plaintiff Semonski submitted the Form E-1R to the Collector.

80.   On or about March 3, 2021, Plaintiff Semonski received a written request from the Collector to submit additional information contained in the Form E-1RV, stating that the refund request could not be processed with the Form E-1RV.

81.   On or about March 22, 2021, Plaintiff Semonski submitted a new Form E-1R with the Form E-1RV attached, along with all requested documentation.

82.   On March 29, 2021, the Collector denied Plaintiff Semonski's refund request.

### Continuing Refusal to Pay Refunds

83.   As of this filing, the City continues to refuse to refund Plaintiffs' earnings taxes withheld from their pay for periods when they performed or rendered services outside the City.

84.   The City continues to require submission of the 2020 E-1R and E-1RV, which unlawfully limit earnings tax refunds to only nonresidents who travel for work but not those who telework from locations outside the City.

### State Statutes Related to Earnings Tax and Refunds of Taxes

85.   Pursuant to RSMo. § 92.111 and § 92.160 the City is not authorized by statute to assess earnings taxes for work unless the work is performed in the city or the services are rendered in the city.

86.   To the extent the Court views Plaintiffs' claims as a "refund suit" and the City argues a protest is required prior to the filing of such a refund action under RSMo. § 139.031, Plaintiffs respectfully maintain that the statute does not and should not apply under the circumstances.

87.   RSMo. § 139.031 provides as follows:

> Any taxpayer may protest all or any part of any current taxes assessed against the taxpayer....

> Any such taxpayer desiring to pay any current taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which the protest is based.
>
> [E]very taxpayer protesting the payment of current taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office.

88. Here, Plaintiffs have not yet been "assessed" any earnings tax or been previously notified by the City of any amount due and owing, rendering the protest provision of § 139.031 inapplicable. This is not a case where the City has demanded payment from Plaintiffs and they have had an opportunity to challenge the proposed assessment by submitting a protest prior to or contemporaneously with making payment. *See e.g., Bachman v. City of St. Louis*, 868 S.W.2d 199, 200 (Mo. Ct. App. 1994) (involving a case where the Collector of Revenue notified plaintiffs that they would be required to pay City earnings taxes on the net profits they received from rents paid on their commercial property; plaintiffs objected to the payment of the tax but paid a portion of it under protest; and then Plaintiffs filed suit seeking damages and declaratory and injunctive relief).

89. Here, Plaintiffs' employers have withheld (and are continuing to withhold) estimated earnings tax payments in the form of payroll withholdings. The City has not made any assessment against the taxpayers. The City is simply refusing to return the money to the taxpayers because Plaintiffs' employers are located within the City. No determination can be made regarding what the taxpayers owe until he or she files his or her tax return (the Form E-1) or seeks a refund using the Form E-1R.

90. Moreover, the City has never required compliance with RSMo. § 139.031 prior to issuing nonresidents refunds based on the number of days worked outside the City. Reliance on this statute now would be disingenuous and only serve to bar Plaintiffs from seeking a

refund of earnings tax withholdings they do not owe by law. Such reliance would violate the customs and practice of the City.

91. While a protest is commonly required in tax challenges prior to filing a refund action,[10] in this case there was nothing to protest during 2020 because the City had not yet started refusing to pay refunds.

92. The City did not refuse to pay refunds for tax year 2020 until the start of 2021.

93. Because of the previously existing custom and practice of employers withholding the 1% all year and employees then applying for and being granted refunds, this case represents a wholly new factual scenario, not contemplated by the customary rule of only allowing refund suits after a protest.

**Specific Hancock Allegations**

94. The Missouri Constitution, Art X, § 22(a), in what is commonly known as the Hancock Amendment, states in relevant part:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base.

95. By refusing to pay refunds and thereby requiring nonresidents of the City to pay earnings tax for work or services performed or rendered outside the City, Defendants have imposed a new tax, license or fee, and/or have increased the tax base.

---

[10] *Lett v. City of St. Louis*, 948 S.W.2d 614, 620 (1996), and other cases.

96.     The requirement is a new tax because before the change in policy work performed or services rendered outside the city by non-city residents was not taxed.

97.     The tax base is being increased because whereas in the past the tax base did not include days worked by non-city residents outside the City, through its change in policy, Defendants are taxing such days.

98.     The voters of the City have never voted to approve the imposition of tax on such days.

99.     Taxes were not proportionately reduced to compensate for taxation of such days.

100.    Defendants' taxing of days worked outside the city by non-city residents violates the Hancock Amendment.

101.    The Hancock Amendment is a future oriented law, such that, in general, the taxpayer bringing suit may only seek declaratory relief in regard to future taxes.[11]

### Policy, *Monell* Liability

102.    The Collector is an elected official and thus a policy maker for the City of St. Louis.[12]

103.    His liability makes the City liable for any judgment for damages rendered in this case.[13]

### Substantive Due Process

104.    The Fourteenth Amendment states, in relevant part:

> "[N]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

---

[11] The court may, under article X, section 23, declare a statute constitutional or unconstitutional. The limited nature of the declaratory, or interpretive, remedy does not authorize a court to enter a judgment for damages or injunctive relief. *Taylor v. State*, 247 S.W.3d 546, 548 (Mo. 2008).

[12] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 500 (1986).

[13] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

105.    Property interests are not created by the Constitution. Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[14]

106.    Plaintiffs have a constitutionally protected property interest in their wages.[15]

107.    The conduct of Defendants in refusing to pay earnings tax refunds:

   a.      Is an abuse of executive power,

   b.      Is an arbitrary action of government, and

   c.      Shocks the conscience.[16]

108.    Defendants had ample time to deliberate on their change in policy to tax days worked or services rendered by non-city residents outside the City.

109.    In the alternative, Defendants' conduct demonstrates deliberate indifference to the property rights of Plaintiffs in their wages.

### Fourth Amendment Seizure

110.    Defendants' retention of earnings tax withholdings even after Plaintiffs and others have filed a proper application for a refund is no different than police officers pocketing money from suspect during arrests.  In both cases the person (in this case the Defendants) have unlawfully kept for themselves property belonging to another.

111.    It is unreasonable for Defendants to have retained Plaintiffs' earnings tax for those days for which Plaintiffs have not worked in the City.

---

[14] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
[15] *Snaidach v. Familly Fin. Corp. of Bay View*, 395 U.S. 337 342 (1969).
[16] *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

**No Eleventh Amendment Immunity**

112.  The Eleventh Amendment does not "extend to suits prosecuted against a municipal

corporation or other governmental entity which is not an arm of the State."[17]

113.  The second important limit to the principle of sovereign immunity is that it bars suits

against States but not lesser entities. The immunity does not extend to suits prosecuted

against a municipal corporation or other governmental entity which is not an arm of the

State." *Alden v. Maine*, 527 U.S. 706, 756 (1999).

**No Sovereign Immunity in Refund Context**

114.  There is no sovereign immunity in the context of a federal due process claim related to

tax refunds:

> Plaintiffs here allege that their tax refunds have been withheld in violation of their
> Fourteenth Amendment due process rights. Thus, this exception to the doctrine of
> sovereign immunity applies. Sovereign immunity cannot serve as a defense in this
> case. *Nelson v. Regan*, 560 F. Supp. 1101, 1104 (D. Conn. 1983).

**Refund as an Effective Remedy**

115.  The law disfavors courts ordering refunds:

> A suit for the refund of taxes paid in error or collected illegally is looked upon
> with disfavor for public policy reasons. *Community Fed. Sav. & Loan Ass'n v.
> Director of Revenue,* 752 S.W.2d 794, 797 (Mo. banc 1988). In *Community
> Federal,* the court explains the reasoning behind this policy, stating:
>
> > Governments are entitled to presume that statutes are constitutional.
> > Governmental budgets are prepared on an annual cash basis.... Therefore,
> > in the absence of a statutory limitation on the time in which a taxpayer
> > may file suit to declare a tax unconstitutional, governments would be
> > subject to substantial liabilities from refunds of those unconstitutional
> > taxes. Accordingly, in the absence of statutory authority, taxes voluntarily,

---

[17] "The second important limit to the principle of sovereign immunity is that it bars suits against
States but not lesser entities. The immunity does not extend to suits prosecuted against a
municipal corporation or other governmental entity which is not an arm of the State." *Alden v.
Maine,* 527 U.S. 706, 756 (1999).

although erroneously paid, albeit under an unconstitutional statute, cannot be refunded.[18]

116.   Nevertheless, this case is *sui generis*. Here the City changed the rules after the tax had been collected. The City's retention of the tax is not just unconstitutional; it shocks the conscience.

117.   What Plaintiffs seek in damages, which equals the amount of refund they were entitled to receive, is nothing more than a return procedurally to the status quo and return of Plaintiffs' property.

118.   The conduct of Defendants is not merely a matter of interpretation of tax laws, for which refunds are not available; the conduct of Defendants shocks the conscience, and therefore is appropriate for judicial action under the civil rights laws.

**The Class**

119.   Plaintiffs bring this action, on behalf of themselves and all others similarly situated. Plaintiff seeks to represent the following class:

> All nonresidents of the City of St. Louis whose employers withheld earnings tax and paid it to the Collector of Revenue during the period January 1, 2020 until class certification, who have submitted a refund request on a properly completed Form E-1R and/or Form E-1RV, and for whom the City has not refunded to such persons an amount withheld equal to the proportion of days of the total work days year during which the person's work was done or the services were performed or rendered outside the City of St. Louis.

120.   The proposed class satisfies each of the class-certification requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

121.   First, the proposed class numbers in the thousands, and is therefore so numerous that joinder of all such members would be impracticable. *See* Fed.R.Civ.P. 23(a)(1).

---

[18] See also, *Lett v. City of St. Louis*, 948 S.W.2d 614, 620 (1996).

122.    Second, Plaintiff and the proposed class members share common questions of law and fact because each of them has had earnings tax withheld from their pay for work or services performed or rendered outside the City. A question common to all class members is whether the City may refuse to pay refunds to such people and whether that refusal violates the U.S. Constitution. *See* Fed.R.Civ.P. 23(a)(2).

123.    Third, Plaintiffs' claims are typical of the proposed class members' claims, in fact, they are identical, because Plaintiffs and the proposed class members are entitled to, among other things, an adjudication of their entitlement to a refund of earnings tax for work or services performed or rendered outside the City. *See* Fed.R.Civ.P. 23(a)(3).

124.    Fourth, Plaintiffs will fairly and adequately protect the interests of the proposed class members. Plaintiffs have no interests that conflict with the proposed class members. *See* Fed.R.Civ.P. 23(a)(4). Moreover, Plaintiffs have retained W. Bevis Schock and Milton Law Group and their associates to serve as class counsel. The lawyers are experienced and knowledgeable concerning class action litigation, taxation and civil rights, and will fairly and adequately represent the interests of the proposed class.

125.    Further, the requirements of Rule 23(a) are satisfied because separate actions instituted by members would create a risk of (A) inconsistent or varying adjudication with respect to members of the class, which would establish incompatible standards of conduct for the party opposing the class, or (B) the prosecution of separate actions by members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. *See* Fed.R.Civ.P. 23(b)(1)(A)-(B).

126.   Further, the requirements of Rule 23(a) are satisfied because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *See* Fed.R.Civ.P. 23(b)(2).

127.   Further, the requirements of Rule 23(a) are satisfied because questions of law or fact common to members of the class predominate over questions affecting only members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3).

128.   Further, the requirements of Rule 23(a) are satisfied because Plaintiffs' claims, and the claims of all similarly situated persons, are all based on tax forms that have been or still can be submitted to the City. Therefore, a determination of the amount owed by each class member is easily determinable.

**Attorney's Fees**

129.   In pursuing this case, Plaintiffs and all others similarly situated are incurring reasonable attorney's fees and costs.

**COUNT I**
**SUBSTANTIVE DUE PROCESS**
**DAMAGES**
**FOURTEENTH AMENDMENT**
**REFUSAL TO PAY REFUNDS**

130.   Plaintiffs incorporate all prior paragraphs.

131.   *First*, Defendants have retained Plaintiffs' property by refusing Plaintiffs' demands to pay refunds of earnings tax withheld from their pay for days in 2020 in which Plaintiffs did not perform work or render services in the City, even though under the earnings tax ordinance, Plaintiffs do not owe earnings tax for such days.

132. *Second*, Defendants' conduct in refusing to pay refunds is shocking to the contemporary conscience.[19] [20] [21]

133. *Third*, as a direct result, Plaintiffs were damaged.

**Prayer**

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

134. Certifies this lawsuit as a class-action,

135. Appoints Plaintiffs as class representatives,

136. Appoints W. Bevis Schock and Milton Law Group as counsel for the class,

137. Awards damages to Plaintiffs and the class, consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during the class period for which Plaintiff has applied for a refund but for which the City has not provided a refund,

138. Awards Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988, and

139. Makes such other orders as the court finds to be just and reasonable.

**COUNT II**
**SUBSTANTIVE DUE PROCESS**
**DAMAGES**
**FOURTEENTH AMENDMENT**
**INSTRUCTING EMPLOYERS TO VIOLATE THE LAW**

140. Plaintiffs incorporate all prior paragraphs.

---

[19] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the umbrella of Rule 4-3.1, asserting that their arguments are in good faith and seek an extension, modification or reversal of existing law.

[20] For elements of verdict director, *see Flowers v. City of Minneapolis, Minn.,* 478 F.3d 869, 873 (8th Cir. 2007)

[21] 8th Cir. Model Jury Instructions 4.40.

141.  *First*, on the 2020 Form E-1R and Form E-1RV for tax year 2020, Defendants have

instructed Employers not to count days worked remotely even though under the

Ordinance, Plaintiffs do not owe earnings tax for such days.

142.  *Second*, Defendants' conduct in instructing employers to refuse to give credit to

Employees for days for which they owe no tax is shocking to the contemporary

conscience.[22] [23] [24]

143.  *Third*, as a direct result, Plaintiffs were damaged.

## Prayer

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

144.  Certifies this lawsuit as a class-action,

145.  Appoints Plaintiffs as class representatives,

146.  Appoints W. Bevis Schock and Milton Law Group as counsel for the class,

147.  Awards damages to Plaintiff and the class, consisting of all earnings tax paid for work or

services rendered or performed outside the City of St. Louis during the class period for

which Plaintiff has applied for a refund but for which the City has not provided a refund,

148.  Awards Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988,

and

149.  Makes such other orders as the court finds to be just and reasonable.

---

[22] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that their argument is in good faith and seeks an extension, modification or reversal of existing law.
[23] For elements of verdict director, *see Flowers v. City of Minneapolis, Minn.,* 478 F.3d 869, 873 (8th Cir. 2007)
[24] 8th Cir. Model Jury Instructions 4.40.

## COUNT III
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
## STOP INSTRUCTING EMPLOYERS TO VIOLATE THE LAW

150.    Plaintiffs incorporate all prior paragraphs.

### Prayer

WHEREFORE, Plaintiff requests that the Court issue preliminary and permanent

injunctive relief in favor of Plaintiffs and the Class:

151.    Ordering the Collector to amend the 2020 E-1R to match the substantive language of the

2019 E-1R, including eliminating the requirement for submitting the Form E-1RV and

removing the language that reads as follows:

> Employees who work remotely from home should be treated as working at their
> original place of work. These days may not be included in the Non-Residency
> Deduction formal on Form E-1R when claiming a refund.

152.    Awarding Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988,

and

153.    Issuing such other orders as the court finds to be just and reasonable.

## COUNT IV
## UNREASONABLE SEIZURE
## FOURTH AMENDMENT

154.    Plaintiffs incorporate all prior paragraphs.

155.    *First*, Defendants have taken possession of Plaintiffs' earnings tax money pursuant to

payroll withholding, and have not returned Plaintiffs' money even though the money

belongs to Plaintiffs and Plaintiffs have filed proper requests for refunds, and

156.    *Second*, Defendants' retention of the money is not reasonable because the City's

Ordinances do not make Plaintiffs' work outside the city taxable, and

157.   *Third*, as a direct result, Plaintiffs were damaged. [25] [26] [27]

## Prayer

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

158.   Certifies this lawsuit as a class-action,

159.   Appoints Plaintiffs as class representatives,

160.   Appoints W. Bevis Schock and Milton Law Group as counsel for the class,

161.   Awards damages to Plaintiff and the class, consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during the class period for which Plaintiff has applied for a refund but for which the City has not provided a refund,

162.   Awards Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988, and

163.   Makes such other orders as the court finds to be just and reasonable.

## COUNT V
## EQUAL PROTECTION
## DAMAGES
## FOURTEENTH AMENDMENT

164.   Plaintiffs incorporate all prior paragraphs.

165.   *First*, the earnings tax Ordinance makes no distinction between non-city residents working remotely from home and working remotely while traveling,

166.   *Second*, Defendants have subjected Plaintiffs to taxes for days working remotely but not while traveling,

---

[25] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that their argument is in good faith and seeks an extension, modification or reversal of existing law.
[26] For elements of verdict director, *see Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).
[27] 8th Cir. Model Jury Instructions 4.40.

167.  *Third,* Defendants have thereby subjected Plaintiffs to taxes not imposed on others of the same class, and

168.  *Fourth,* as a direct result, Plaintiffs were damaged. [28] [29] [30]

### Prayer

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

169.  Certifies this lawsuit as a class-action,

170.  Appoints Plaintiffs as class representatives,

171.  Appoints W. Bevis Schock and Milton Law Group as counsel for the class,

172.  Awards damages to Plaintiff and the class, consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during the class period for which Plaintiff has applied for a refund but for which the City has not provided a refund,

173.  Awards Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988, and

174.  Makes such other orders as the court finds to be just and reasonable.

### COUNT VI
### EQUAL PROTECTION
### FOURTEENTH AMENDMENT
### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

175.  Plaintiffs incorporate all prior paragraphs.

176.  *First,* the earnings tax Ordinance makes no distinction between non-city residents working remotely from home and working remotely while traveling,

---

[28] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that their argument is in good faith and seeks an extension, modification or reversal of existing law.
[29] For elements of verdict director, *see Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989) and *Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946).
[30] 8th Cir. Model Jury Instructions 4.40.

177. *Second*, Defendants have subjected Plaintiffs to taxes for days working remotely but not while traveling, and

178. *Third,* Defendants have thereby subjected Plaintiffs to taxes not imposed on others of the same class, and

179. *Fourth*, as a direct result, Plaintiffs were damaged.

## Prayer

WHEREFORE, Plaintiff requests that the Court issue preliminary and permanent injunctive relief in favor of Plaintiffs and the Class:

180. Ordering the Collector to amend the 2020 E-1R to match the substantive language of the 2019 E-1R, including eliminating the requirement for submitting the Form E-1RV and removing the language that reads as follows:

> Employees who work remotely from home should be treated as working at their original place of work. These days may not be included in the Non-Residency Deduction formal on Form E-1R when claiming a refund.

181. Awarding Plaintiffs' counsel reasonable attorney's fees and costs under 42 U.S.C. 1988, and

182. Issuing such other orders as the court finds to be just and reasonable.

## COUNT VII
## HANCOCK AMENDMENT
## DECLARATORY RELIEF

183. Plaintiffs incorporate all prior paragraphs.

184. Plaintiffs proceed on this count as individual taxpayers and not as class representatives.

185. By requiring nonresidents of the City to pay earnings tax for work or services performed or rendered outside the City, the City has imposed a new tax or expanded the tax base without a vote of the people.

186. The City has exceeded its authority and violated Chapter 5.22 of the Code.

187.    A controversy exists between the parties as to whether the City may impose the earnings tax on nonresidents for work or services performed or rendered outside the City.

188.    This claim is appropriate for entry of a declaratory judgment under RSMo. 527.010 and Rule 87 of the Missouri Rules of Civil Procedure.

189.    The facts averred demonstrate that a justiciable controversy exists between the parties, that Plaintiffs have a legally protectable interest at stake, and the issues brought before the Court are appropriate for declaratory relief.

190.    Declaratory relief is necessary and proper to determine the rights and liabilities of the parties.

191.    The Collector has advised the public that nonresidents cannot receive and are not entitled to receive a refund for work and services rendered or performed outside the City. These statements have discouraged nonresidents from submitting requests for refunds.

**Prayer**

WHEREFORE, Plaintiffs pray the court to issue declaratory relief as follows:

192.    Finding Defendants' refusal to issue refunds to non-city residents who worked remotely from locations outside of the City of St. Louis during 2020 violates the Hancock Amendment,

193.    Finding Defendants' refusal to issue refunds to non-city residents who worked remotely from locations outside of the City of St. Louis during 2020 violates the Ordinance (Section 5.22.010).

194.    Declare unlawful Defendant Collector's practice of including an instruction to Employers on the refund form (the 2020 Form E-1R) that remote work should not count as days worked outside the city and not subject to tax.

195.    Awards Plaintiffs' counsel reasonable attorney's fees and costs under Missouri

Constitution, Art X, § 23, and

196.    Makes such other orders as the court finds to be just and reasonable.


Respectfully Submitted,

Attorneys for Plaintiffs

**W. Bevis Schock**

/s/ W. Bevis Schock
W. Bevis Schock, 32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, Missouri 63105
Phone: (314) 726-2322
Fax: (314) 721-1698
wbschock@schocklaw.com

**Milton Law Group**

/s/ Mark C. Milton
Mark C. Milton, 63101MO
12026 Manchester Road
St. Louis, MO 63131
Tel: 314-394-3370
Fax: 314-394-3371
mark.milton@miltonlawgroup.com